United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jayjay Don, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-25322-Civ-Scola |
| | ) |
| Equinox Brickell, Inc., Defendant. | ) |

**Order Denying Motion to Dismiss**

     Plaintiff Jayjay Don ("Don"), a Black man, seeks damages from Defendant Equinox Brickell, Inc.("Equinox") for its discriminatory interference with a membership contract in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. (Am. Compl., ECF No. 1 ¶ 1.) Equinox has filed a motion to dismiss the complaint arguing that Don has failed to state a claim for a violation of Section 1981 because she fails to allege that non-Black customers were treated more favorably than Don. (ECF No. 8.) Don opposes the motion. (ECF No. 9). And Equinox has timely replied. (ECF No. 10.) After careful review, the Court **denies** Equinox's motion. **(ECF No. 8.)**

    **1. Background**[1]

     Don is a Black and/or African American man. (ECF No. 1 ¶ 5.) In 2018, Don lived at the SLS Lux in Miami, Florida. As part of his rental contract, the condominium association offered a free membership at Equinox, a gym in Miami, beginning on July 2018. (*Id.* ¶ 6.) Don took advantage of the promotion and signed up for a gym membership. In approximately July 2019, Don was notified that the free gym membership had expired, and Don was only eligible for a discounted membership. (*Id.* ¶ 7.) Don signed up for the discounted gym membership with an unidentified Equinox manager. (*Id.* ¶ 13.) Prior to end of the first gym term, Equinox's General Manager had been disrespectful towards Don, giving him dirty looks. (*Id.* ¶ 8.)

     In October 2019, the General Manager called Don to inform him that his discounted gym membership had been terminated. (*Id.* ¶ 9.) Don requested that the General Manager provide him with a revocation letter and a copy of the gym membership contract. (*Id.* ¶ 11.) The General Manager denied those requests. (*Id.* ¶¶ 11, 12.) Unlike Don whose discounted gym membership

---

[1] The Court generally accepts Don's factual allegations as true for the purposes of evaluating Equinox's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

contract was terminated, "[t]here are multiple White members at the gym who have been allowed to take advantage of the discount." (*Id.* ¶ 15.) Don believes that the gym membership contract was terminated because the General Manager and management racially discriminated against him. (*Id.* ¶ 16.)

Don filed his one-count complaint on August 14, 2020 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade Count. (ECF No. 1-3), alleging a violation of Section 1981. (ECF No. 1.) Don amended his complaint as a matter of course and Equinox removed the amended complaint to this division. (ECF No. 1). Equinox now moves to dismiss the complaint on the grounds that it fails to allege that non-Black customers were treated more favorably, thus failing to state a claim. (ECF No. 8.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts…" *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). To succeed on a Section 1981 claim, Don must establish (1) that he is a member of a racial minority; (2) that Equinox had the intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)). Don is Black; thus, the first element is not disputed. Equinox challenges the second and third elements. Therefore, the Court's analysis turns on whether the amended complaint sufficiently alleges Equinox's intent to discriminate and whether its conduct violated Don's rights to make and enforce the contract.

Turning first to allegations of Equinox's intent, the Court finds that Don has satisfied his burden. The amended complaint alleges that the General Manager at issue gave him dirty looks and terminated his discounted gym membership without cause, while White members were allowed to enjoy their memberships. Equinox relies on *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004) in support of his argument, however, that case is inapposite. There, the operative complaint alleged discriminatory intent in a conclusory fashion, relying on wholly unrelated facts related to a RICO claim to allege discriminatory intent under Section 1981. *Id.* at 1272.; *compare with Middleton v. Wells Fargo Bank, N.A.*, 474 F. Supp. 3d 1290, 1293 (N.D. Ga. 2020) (Pannell, J.) (finding discriminatory intent had been sufficiently pled in an allegation that "While neither the teller nor the managers used any racial slurs or epithets, in her experience living as an African American, Ms. Middleton is able to identify when she is being discriminated against on the basis of race.")

Next, the Court addresses the third element, in other words, whether Equinox's conduct interfered with Don's right to make and enforce a contract. Recognizing "there exists scant authority in our circuit applying § 1981 to

claims brought by customers against commercial establishments," the Eleventh Circuit applies the Fifth Circuit's approach in *Arguello v. Conoco., Inc.*, 330 F.3d 355 (5th Cir. 2003). *Kinnon*, 490 F.3d at 891; *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012) (finding the Fifth Circuit's reasoning in *Arguello* to be persuasive). *Arguello* stands for the proposition that, "where a customer has engaged in an actual attempt to contract that was thwarted by the merchant," a Section 1981 claim exists. *Arguello*, 330 F.3d at 358. By contrast, when the customer "successfully completes the transaction," he has received all that he was entitled to under the retail contract. *Id.* at 359; *see also Kinnon*, 490 F.3d at 888-92 (affirming summary judgment and dismissal of Section 1981 claim, explaining that Kinnon successfully entered into a verbal contract for the pizza delivery, and when the delivery was late, Kinnon successfully took steps to terminate the contract and ate out of the office at a restaurant.)

The Court finds *Lopez* most instructive on this point.  There, a Hispanic male went to a Target store and tried to pay for some items at a check-out line. *Lopez*, 676 F.3d at 1231. The cashier stated that her register was closed. *Id.* The cashier clarified, in a very loud voice, "Don't you understand? I'm closed to YOU!'" *Id.* at 1232. Lopez proceeded to a different register, paid for his items, and, after telling that cashier what had transpired, received an apology and $9 in coupons from the supervisor. *Id.* The Eleventh Circuit was not persuaded by the fact that the cashier twice rejected Lopez's offer to contract, forcing him to complete his transaction with a different cashier. *Id.* at 1235. It held, "Lopez was not attempting to contract with [the specific cashier] directly. Plainly, he was attempting to contract with Target, and he was successful in that endeavor." *Id.* (further explaining, "Because Lopez was able to make his desired purchase from Target, on the same terms available to any other customer, [the cashier's] discriminatory conduct did not impair Lopez's right to make contracts under § 1981.").

Relying on these cases, Equinox argues that Don was not prevented from entering into a gym membership contract. Equinox argues that Don has failed to state a claim because he has not alleged that non-Black customers were treated more favorably, and has instead, alleged the opposite. (ECF No. 8 at 1.) "Indeed, the Amended Complaint states that Plaintiff was offered the opportunity to enter into a contract at a discounted rate, and alleges that White members were also offered the same opportunity to enter into a contract at a discounted rate." (*Id.* at 5.) However, Equinox oversimplifies the facts in this matter. As Don points out, although he was able to enter into the contract for a gym membership, he was not able to enjoy the rights under same because the contract was unilaterally and discriminatorily terminated by Equinox. This

case although analogous to *Lopez*, is critically different, because Don was refused the opportunity to challenge the decision with another manager. The Eleventh Circuit noted in *Lopez*, "We are not faced here with circumstances where a customer was refused service by the retail store, was required to contract on different terms, got frustrated and left the store, or was in any other way denied the right to make, enforce, or terminate a contract." *Lopez*, 676 F.3d at 1235 (11th Cir. 2012). But here, the court is faced with those circumstances. Taking all of Don's allegations as true, as the Court must, Equinox in its entirety denied Don the opportunity to enforce or continue the contract. Moreover, the Court notes that the cases cited by Equinox were decided on summary judgment, after both parties had the benefit of taking discovery. Here too, the Court finds that Equinox's arguments may be premature and are better left decided at the summary judgment stage.

### 4. Conclusion

For these reasons, Equinox's motion to dismiss is **denied**. **(ECF No. 8.)**

**Done and ordered**, at Miami, Florida, on June 15, 2021.

Robert N. Scola, Jr.
United States District Judge